IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CONEXUS METALS LLC,

Plaintiff,

v.

CRH CANADA GROUP, INC.,

Defendant.

24cv1770
ELECTRONICALLY FILED

**Memorandum Order on Cross-Motions for Partial Summary Judgment**

## I. Introduction/Background Facts

This cause of action arises out of a common law breach of contract claim and under the Uniform Commercial Code (UCC Section 2-709), at counts one and two, based upon diversity of citizenship and a choice of law/jurisdiction clause under the contract specifying Allegheny County as the applicable forum (either state or federal court). The four count Complaint further alleges fraudulent and negligent misrepresentation claims sounding in tort, at counts three and four.

The subject matter of this dispute concerns a specialized industry whereby Conexus Metals, LLC ("Plaintiff" or "Conexus"), operates as an intermediary for the securing of coal purchases for large industrial consumers. More specifically, Conexus, a local Pittsburgh based company, sources, prices and often transports coal purchases to terminals along Lake Erie to be loaded onto bulk cargo ships for high volume buyers including Defendant, CRH, Canada Group, Inc. ("Defendant" or "CRH"), a Canadian corporation who operates as a wholly owned subsidiary of an Ireland based corporation.

The parties, who had been doing business for several years, had a contractual agreement for Conexus to secure, and for CRH to purchase and accept 100,000 short tons of high volatility bituminous thermal coal from Conexus for delivery to CRH in 2024, for a price of $12.4 million.[1] (Doc. 1-3). In a nutshell, after a protracted period of negotiations where the parties appeared to work to reach a compromise, CRH ultimately refused to accept the coal allegedly for reasons discussed below, and Conexus filed this lawsuit.

The parties have filed hundreds of pages allegedly joint concise statements of material fact. (Doc. 80, Doc. 85, Doc. 90, Doc. 93, Doc. 97, Doc. 98). The facts presented are neither joint nor concise, thereby evidencing how many genuine issues of fact are actually in dispute.

According to Plaintiff, Defendant refused to accept the coal and breached the contract "without any basis whatsoever," and repeatedly made false representations that it would accept the coal under the 2024 contract, by deferred deliveries in 2025-2026 to Plaintiff's detriment. Defendant counters that following a fire and then an explosion at their Mississigua plant in April and in May of 2023, it was determined that the high volatility coal supplied by Conexus was unsafe for its current system and prior to these incidents Defendant had used lower volatility coal at the plant. While Conexus blames the incidents on employee negligence and improper safety protocols, CRH contends that the high volatility coal was a cause of the incidents, noting that 20 to 25% volatile index was needed. Because Conexus had already secured the coal that was the subject of the 2024 contract, when Conexus asked CRH if intended to take delivery of the coal, in an April 17, 2024, email CRH stated: "we will be taking the volume for both contracts and

[1] The parties previously entered into a three-year contract in 2019 which spanned the years of 2020-2022. They also had a one-year contract in 2023 that had different tonnage, price and delivery dates. Doc. 1-2; Doc. 98 (Joint Concise Statement of Material Facts "JCSMF" at paragraph 50).

will be taking the 2024 contracted material in 2025/2026 please align." Doc. 98 at paragraph 133. According to Conexus, this statement as well as the statement on July 11, 2024, when CRH advised Conexus that it was "looking for all the vessels in 2025, and that the plant has confirmed this can happen based on reorganizing of the stockpiles to ensure we have room," Doc. 98 at paragraph 157, forms the basis for its misrepresentation claims.

Plaintiff contends, in its Motion for Partial Summary Judgment (Doc. 83) that it is entitled to summary judgment as a matter of law on its breach of contract and UCC claims, as well as the misrepresentation claims, with only the question of damages to be determined by a jury. Defendant counters that numerous issues preclude summary judgment, namely: that the 2023 contract was modified to substitute lower volatility coal after the incidents in Mississigua, and that the parties understood that the 2024 contract would need to be modified in order for Defendant to perform under that contract. Defendant also advances a *force majeure* defense under the terms of the contract (Section 17) and states that there are genuine issues of material fact as to whether the 2024 contract was terminated as a result of the *force majeure* clause in the 2024 contract. Defendant simultaneously moves for partial summary judgment (Doc. 79) on the basis that Plaintiff fraudulent and negligent misrepresentation claims at counts three and four of the Complaint are precluded by the economic loss/gist of the action doctrines.

Currently pending before this Court are the parties' cross-motions for partial summary judgment. The Court will grant Defendant's Motion for Partial Summary Judgment (Doc. 79), finding that the tort and fraud claims are not collateral to the contract, under gist of the action/economic loss doctrine, that certain damages (attorney's fees and punitive damages) are not recoverable under statutory authority or the contract, and will deny Plaintiff's Motion for Partial Summary Judgment (Doc. 83), finding that genuine issues of material fact preclude a

determination as a matter of law that Defendant breached the contract and violated the UCC, in this case.[2] Therefore, summary judgment on the misrepresentation claims is granted, and summary judgment on the breach of contract and UCC claims is denied. This matter will therefore proceed to a jury trial. Given the numerous genuine and material factual disputes at issue and the significant factual complexity of this matter, the Court will first order the parties to a second round of mediation.

## II. Standard of Review

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010).

A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, (1986); *see also Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). Disputes must be both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning there is sufficient evidence supporting the claimed factual dispute "to require a jury or judge to resolve the parties' differing versions of the truth at trial. *In re*

[2] Although theoretically both a common law breach of contract claim and a breach of the UCC claim may co-exist, the law is clear that a double recovery is not permissible at trial. *Gamesa Energy USA, LLC v. Ten Penn Center Associates, L.P.*, 217 A.3d 1227, 1238-41 (Pa. 2019)(Alternative remedies may be pursued during litigation but the election of remedies doctrine precludes a windfall by recovering damages twice for the same harm). The parties will be required to brief this issue to determine a path forward in order to avoid the possibility of a double recovery under the election of remedies doctrine. Id. A status conference will be scheduled shortly where the Court will address briefing on this issue, a second round of mediation, and a potential trial date.

*Lemington Home for Aged*, 659 F.3d 282, 290 (3d Cir. 2011); *see also S.H. ex rel. Durrell v. Lower Merion School Dist.*, 729 F.3d 248 (3d Cir. 2013).

A party moving for summary judgment has the initial burden of supporting its assertion that fact(s) cannot be genuinely disputed by citing to particular parts of materials in the record – i.e., depositions, documents, affidavits, stipulations, or other materials – or by showing that: (1) the materials cited by the non-moving party do not establish the presence of a genuine dispute, or (2) that the non-moving party cannot produce admissible evidence to support its fact(s). Fed.R.Civ.P. 56(c)(1). The moving party may discharge its burden by "pointing out to the district court" the "absence of evidence to support the nonmoving party's case" when the nonmoving party bears the ultimate burden of proof for the claim in question. *Conoshenti v. Public Service Elec. & Gas Co*, 364 F.3d 135, 140 (3d Cir. 2004) (quoting *Singletary v. Pennsylvania Dept. of Corrections*, 266 F.3d 186, 192 n. 2 (3d Cir. 2001)).

Conversely, in order to defeat a motion for summary judgment, the non-moving party must support its assertion that fact(s) are genuinely disputed by citing to particular parts of materials in the record, or by showing that: (1) the materials cited by the moving party do not establish the absence of a genuine dispute, or (2) the moving party cannot produce admissible evidence to support its fact(s). Fed.R.Civ.P. 56(c)(1). When determining whether there are any genuine issues of material fact, all inferences should be drawn in favor of the non-moving party. *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

In reviewing a motion for summary judgment, the court does not make credibility determinations, and summary judgment is "inappropriate when a case will turn on credibility determinations." *El v. Southeastern Pennsylvania Transp. Authority*, 479 F.3d 232 (3d Cir. 2007).

In the instant case, the parties have filed cross-motions for summary judgment. It is well established in this circuit that the filing of contradictory motions for summary judgment "does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Lawrence v. City of Philadelphia, Pa.*, 527 F.3d 299 (3d Cir. 2008) (quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)).

## III. Discussion

### A. Misrepresentation Claims are Barred by Economic Loss Doctrine/Gist of the Action Doctrine

"The economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from contract." *Dittman v. UPMC*, 196 A.3d 1036, 1054 (Pa. 2018)(other citations omitted). The doctrine is premised on the notion that parties to a contract may protect themselves from negligence or defective products by negotiating the liability terms of the contract. *East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 872-73 (1986). Like the gist of the action doctrine, the purpose of the economic loss doctrine, as adopted in Pennsylvania, is "maintaining the separate spheres of the law of contract and tort." *New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.,* 387 Pa.Super. 537, 550, 564 A.2d 919, 925 (1989). *See also Bilt-Rite Contractors, Inc. v. Architectural Studio*, 581 Pa. 454, 866 A.2d 270 (2005) (adopting Restatement (Second) of Torts Section 552, Pennsylvania Supreme Court holds that architect hired by developer could be liable to third-party contractor for negligent misrepresentation, in spite of contractor's lack of contractual privity with architect, and that the traditional bar against recovery in tort for economic losses between contracting parties did not apply); *Werwinski v. Ford Motor Co.,* 286 F.3d 661, 675-76 (3d Cir.

2002) (predicting that the Pennsylvania Supreme Court would apply the economic loss doctrine to claims of intentional fraud between contracting parties, but noting with approval a trend in federal courts "'recogniz[ing] a limited exception to the economic loss doctrine for fraud claims, but only where the claims at issue arise independently.") The economic loss doctrine originally applied only to product liability claims, with the expectation that parties could recover purely economic damages caused by a defective product under contract theory. *Transamerica Delaval, Inc.*, 476 U.S. at 871. The expanded reach of the doctrine to cover negligence has been justified on the basis that parties can protect themselves by negotiating the terms of a manufacturer's liability. Id. at 872-73. Pennsylvania courts addressing the economic loss doctrine have accepted the Supreme Court's rationale and focused on the ability of the purchaser to recover economic harm under a breach of warranty claim. *See REM Coal Co. Inc. v. Clark Equipment Co.*, 386 Pa.Super. 401, 563 A.2d 128 (1989) (en banc). *See, e.g., Constar, Inc. v. National Distrib. Centers, Inc.*, 101 F.Supp.2d 319, 322 5 (E.D.Pa. 2000) (the economic loss doctrine "prohibits recovery in tort for economic losses to which the party's entitlement flows only from a contract"); *Sunquest Info. Sys. v. Dean Witter Reynolds*, 40 F.Supp.2d 644, 659 n. 13 (W.D.Pa. 1999) ("the economic loss analysis appears similar, if not identical to, the application of the 'gist of the action' doctrine of the underlying contract.'").

Similarly, the gist of the action doctrine bars the misrepresentation claims because they are not collateral to, but instead flow directly out of the contract at issue. The gist of the action doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims." *eToll, Inc. v. Ellias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002). "As a practical matter, the doctrine precludes plaintiffs from recasting ordinary breach of contract claims into tort claims." *Id.*

This Court need not look further than to an esteemed colleague across the hall, The Honorable David Cercone, whose opinion in a similar case provides answers to the questions here. *Crown Coal & Coke Company v. Powhatan Mid-Vol Coal Sales*, 012-cv-222 (W.D. Pa. 2012). *Powhatan*, albeit at the motion to dismiss phase instead of summary judgment, is closely factually analogous to the matter at hand. In that case, the parties' dispute arose in the same industry. Powhatan as a seller of mid-volatile metallurgical coal entered into a 5 year long-term contract with Crown Coal and Coke Company, who was to supply for a steady and reliable supply of coal. Much like the instant case, the Court noted that in this type of specialized business, it is not uncommon for parties to renegotiate, amend, or otherwise modify their contracts due to changes in the economy, the supply and demand for the product, and/or their specific business operations. Crown Coal claimed that Powhatan breached its contract by failing to pay over $400,000.00 in outstanding invoices, and Powhatan counterclaimed that Crown breached the agreement as amended and counterclaimed for reliance damages flowing therefrom, also asserting a misrepresentation counterclaim. The Court in *Powhatan* aptly explained the gist of the action doctrine in the context of a breach of contract action with a fraudulent misrepresentation claim. Rather than reinventing the wheel, the Court will repeat the explanation of the gist of the action doctrine and its application to this similar dispute.

> Powhatan's fraudulent misrepresentation claim is barred by the gist of the action doctrine because it is an impermissible duplication of its contract claim. The gist of the action doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims*." eToll, Inc. v. Ellias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002). "As a practical matter, the doctrine precludes plaintiffs from recasting ordinary breach of contract claims into tort claims." *Id.* In general, the difference between contract claims and tort claims depends upon the origin of the duties alleged to have been breach by the defendant's conduct. "Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals." *Id.* (quoting *Bash v. Bell Tel. Co.*,

601 A.2d 825, 829 (Pa. Super. 1992)). To be sure, the two causes of action are not mutually distinct. Id. To the contrary, it is quite "possible that breach of contract also gives rise to an actionable tort." *Id.* But "to be construed as in tort, however, the wrong ascribed to [the] defendant must be the gist of the action, the contract being collateral." *Id.* (quoting *Bash*, 106 A.2d at 829). "In other words, a claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts.'" *Id.* (quoting *Bohler-Uddeholm Am., Inc., v. Ellwood Group, Inc*., 247 F.3d 79, 104 (3d Cir. 2001), cert. denied, 534 U.S. 1162 (2002)). Whether the gist of the action doctrine applies in any particular setting is a question of law. Id. In making that determination the court is to consider both the nature of the action as a whole and the essential ground, foundation or material parts giving legal effect to the plaintiff's complaint. As a number of courts have observed: The test is not limited to discrete instances of conduct; rather, the test is, by its own terms, concerned with the nature of the action as a whole. "Gist" is a term of art in common law pleading that refers to the "essential ground or object of the action in point of law, without which there would be no cause of action." Blacks Law Dictionary 689 (6th ed. 1990). "Action" is defined by Black's Law Dictionary as "a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law ... the "gist of the action" tests, then, is a general test concerned with the "essential ground," foundation or material part of an entire "formal complaint" or lawsuit. *eToll*, 811 A.2d at 15 (quoting *American Guar. and Lia. Ins. Co., v. Fojanini*, 90 F. Supp.2d 615, 622-23 (E.D. Pa. 2000)). In general, the courts have applied the gist of the action doctrine to bar tort claims in four separate settings: (1) were the claims arise from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where a tort claim essentially duplicates a breach of contract claim or its success is wholly dependent on the terms of a contract. *eToll*, 811 A.2d at 20. In the well-reasoned and well-followed opinion handed down in *eToll*, the Superior Court determined that "the gist of the action doctrine should apply to claims for fraud in the performance of a contract." Id. This assessment is the settled law of Pennsylvania until the Supreme Court of Pennsylvania decides otherwise. Of course, the doctrine permits the advancement of a tort claim where a contract claim is collateral to the tort.

Even assuming there is a sufficient factual basis for Powhatan advancing such assertions regarding Crown's "state of mind," such averments do not change the origin of the duties allegedly breached by Crown or the manner by which Powhatan became subjected to the harm about which it complains. *Compare Caudill Seed and Warehouse Co., Inc. v. Prophet*, Inc., 123 F. Supp.2d 826, 833-34 (E.D. Pa. 2000) (granting motion to dismiss fraud claims under gist of the action doctrine even though the defendant fraudulently strung the plaintiff along by repeatedly assuring that its products would work and live up to the promised benefits of the bargain); *Harold v. McGann*, 406 F. Supp.2d 562, 577 (E.D. Pa. 2005) (same).

*Crown Coal & Coke Company v. Powhatan Mid-Vol Coal Sales*, 12-cv-222 (doc. 32)(The Honorable David Cercone, W.D. Pa. March 8, 2013).

Since the *Powhatan* decision, the Supreme Court of Pennsylvania has definitively spoken on the gist of the action doctrine and has further clarified that it is the source of the duty allegedly breached, rather than whether the parties had a contractual relationship that controls in *Bruno v. Erie Insurance*, 106 A.3d 48 (Pa. 2014).

More recently, in *Downs v. Andrews*, 639 Fed. Appx. 816 (3d Cir. 2016), the United States Court of Appeals for the Third Circuit summarized the current state of the law on this issue: Plaintiffs cannot rescue their claim by attempting to cast their complaint as one alleging breach of a different duty, such as fraud in the inducement or misrepresentation. In that case, the Court, citing *Bruno*, held that Plaintiffs' complaint demonstrates that the primary basis for alleging that fraudulent or negligent misrepresentation activity is grounded solely in the performance of the contract itself, not a failure to fulfill a separate societal duty which may exist in other cases, see *Bruno*, 106 A.3d at 68, and therefore affirmed the District Court's dismissal of the complaint pursuant to the gist of the action doctrine.

As this Court previously reasoned in *Clark v. Applied Cardiac Systems*, Inc. 2:22-cv-00056 (doc. 83)(W.D. Pa. April 13, 2023), when it discussed a fraudulent misrepresentation claim and found that the allegations in that Complaint compelled a dismissal of that claim on the basis that the gist of the action did not reveal a fraud in the inducement claim. Instead, the alleged fraudulent misrepresentations occurred in the performance of the contract, were certainly intertwined with the performance of the contract, and did not relate to some broader societal duty that were independent of the contract. Although that decision was at the motion to dismiss stage, the Court also finds that the misrepresentation claims (both negligent and fraudulent), occurred

squarely within the performance of the contract, were intertwined with it and do not establish the breach of a broader societal duty. The alleged misrepresentations merely are centered upon Defendant's alleged non-performance of the contract and therefore, the gist of the action doctrine dictates that the breach of contract claim presents essential questions for the jury, and any representations that CRH officials made do not constitute tort-based claims, as they are grounded in the contract and not a societal duty.

More specifically, the April 17, 2024 "please align" email, and the July 11, 2024 email that CRH was "looking for all the vessels in 2025, and that the plant has confirmed this can happen based on reorganizing of the stockpiles to ensure we have room," are intertwined with and not collateral to the contractual relationship between the parties. The claims here arise from the contract between the parties and the source of the duty is grounded in the contract itself. Therefore, the duties allegedly breached were created and grounded in the contract itself, the liability stems from the contract, the tort claims essentially duplicate the breach of contract claim and their success is wholly dependent on the terms of the contract. Accordingly, the Court will grant summary judgment in favor of Defendant and against Plaintiff on the misrepresentation claims at counts three and four of the Complaint.

Breach of Contract/UCC and Affirmative Defense

Conexus is still left with a common law breach of contract action, and the UCC claim for Refusal to Accept and Pay for Goods under UCC §2-709 and 13 Pa.C.S. §2709.

Conexus contends that summary judgment on the breach of contract and UCC claims should be granted in its favor, also on the basis that CRH waived the defense of *force majeure* by failing to raise it as an affirmative defense.

Reviewing the affirmative defenses in the Answer of CRH, the following language is plead:

> AFFIRMATIVE DEFENSES
>
> 1. Plaintiff's Complaint fails to state a claim upon which relief can be granted against Answering Defendant.
>
> 2. <u>Answering Defendant did not breach the 2024 contract</u>.
>
> 3. At all times, <u>Answering Defendant acted in accordance with the 2024 contract</u>.
>
> 4. Answering Defendant did not breach any duty actually owed to Plaintiff.
>
> 5. To the extent Plaintiff suffered any damages or harm, which is denied, <u>such damages and harm are subject to the terms of the 2024 contract.</u>
>
> 6. At all times material hereto, <u>Answering Defendant met its obligations under the terms of the 2024 contract and the law.</u>
>
> 7. <u>Answering Defendant properly and reasonably refused acceptance of materials under the 2024 contract.</u>
>
> 8. Answering Defendant committed no acts or omissions that are the result of willful, wanton and/or malicious conduct or reckless disregard.
>
> 9. Answering Defendant committed no acts or omissions that are the result of conduct that manifests a knowing and reckless indifference toward, or a disregard of, the rights of others.
>
> 10. Plaintiff failed to mitigate its damages.
>
> 11. Answering Defendant reserves the right to move to amend this Answer to include additional defenses as discovery and investigation may reveal.

Doc. 17, at pages 23-24. (Emphasis added).

Conexus contends that waiver of this affirmative defense is appropriate and cites *Charpentier v. Godsil*, 937 F.2d 859 (3d Cir. 1991) for the proposition that "[f]ailure to raise an affirmative defense by responsive pleading or by appropriate motion generally results in the waiver of that defense." (Doc.104 at 4.) Conexus paints the picture of that holding with too broad of a brush, however. As CRH emphasizes, and this Court agrees, in *Godsil*, the Court of

Appeals for the Third Circuit further explained that "[f]ailure to raise an affirmative defense by responsive pleading or appropriate motion, however, does not always result in waiver" and that a "defendant does not waive an affirmative defense if he raised the issue at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond." *Charpentier*, 937 F.2d at 863-64 (alterations omitted). Given the above language in the Affirmative Defenses, namely that "Defendant properly and reasonably refused acceptance of materials under the 2024 contract," combined with the extensive discovery in this case on the *force majeure* defense, shows that the was no prejudice by failing to expressly raise the words "*force majeure*" in its Answer and Affirmative Defenses.

Conexus also cites *Memphis Street Academy Charter School at J.P. Jones v. Philadelphia School District*, No. 25-2574, 2026 WL 934190 (3d Cir. Apr. 7, 2026), a case where plaintiffs had raised *force majeure* and other defenses in their pleading but "did not develop [those] arguments . . . in their summary judgment briefing." 2026 WL 934190, at *6. This case is of little relevance to the present case because CRH briefed the issue of *force majeure* extensively in its brief in opposition to Conexus's Motion for Partial Summary Judgment (Doc. 89 at pages 13-18). Additionally, waiver of the defense is not even discussed in *Philadelphia School District*, and instead focuses on whether grounds not relied upon at summary judgment are abandoned, when not addressed at summary judgment.

The Court of Appeals for the Third Circuit does not require these exact magic words in order to assert a proper Affirmative Defense. The Court in *In re Frescati Shipping Co.*, 886 F.3d 291, 313 (3d Cir. 2018), highlighted that the party asserting an affirmative defense should provide fair notice of that defense. *See also, Mifflinburg Telegraph, Inc. v. Criswell*, 80 F.Supp.

3d 566, 573-74 (M.D. Pa. 2015)(Affirmative Defenses do not need to contain extensive factual allegations, so long as the pleadings give fair notice of their relevance to the litigation).

This Court finds that CRH's Answer and Affirmative Defenses fairly and reasonably notified Conexus that CRH intended to use a contractual basis for its nonperformance. Additionally, given the parties' pre-suit correspondence (where the *force majeure* clause was explicitly set forth as the basis for its decision not to accept the coal) and the parties substantial discovery on the *force majeure* affirmative defense during this action (as further set forth at Doc. 112 and attachments at Exhibits 1 and 2), it strains credulity to state that Conexus did not have more than fair notice of the defense.

In conclusion, this Court finds that material factual disputes remain on the issue of the breach of contract and UCC action – i.e. whether the parties modified the contract, whether the fire and explosion actually constituted a *force majeure* which prevented contractual performance, including whether the events were actually beyond CRH's control, whether CRH took reasonable steps to overcome the incidents, or whether CRH in fact breached the contract at issue.

<u>Damages</u>

CRH also posits that it is entitled to summary judgment on demands for attorneys' fees by Conexus because no statute or contract authorizes such a recovery in this case, as required by Pennsylvania law, citing *Dehart v. HomEq Servicing Corp*., 679 F. Appx. 184, 190 (3d Cir. 2017) (quoting *Merlino v. Delaware County*, 728 A.2d 949 (Pa. 1999), and citing *Fidelity-Phila. Trust Co. v. Phila. Transp. Co.*, 173 A.2d 109, 113-14 (Pa 1961)); accord *Norco ex rel. Norco v. Allstate Ins. Co.*, No. 2:11-CV-1453, 2012 WL 6762017, at *3 (W.D. Pa. Oct. 26, 2012) (Lenihan, J.).

Indeed, the 2024 Coal Contract does not provide for a recovery of attorneys' fees; nor does Conexus identify any applicable statutory authority, including under the UCC, authorizing such a recovery. Nonetheless, Conexus seeks attorneys' fees in connection with each of the four counts of its Complaint. (Doc. 1-3); (Doc. 98 at paragraph 3.) Additionally, Conexus' brief in opposition to CRH's Motion for Partial Summary Judgment does not mention the matter of attorney's fees, or even address the basis for this requested relief. (Doc. 94). The Court finds that a recovery of attorney's fees is not appropriate or permissible in this case, especially given that the fraudulent misrepresentation claim has been dismissed.

Finally, with regard to Conexus request for punitive damages, because the misrepresentation claims have been dismissed, and because Section 18 of the 2024 Coal Contract precludes a demand for punitive damages, CRH is entitled to summary judgment as to Conexus's demands for punitive damages.

For the reasons set forth herein, it is hereby Ordered that Plaintiff's Motion for Partial Summary Judgment (Doc. 83) is DENIED; and Defendant's Motion for Partial Summary Judgment (Doc. 79) is GRANTED.

SO ORDERED this 27th day of October, 2026.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge